**Electronically Filed
Supreme Court
SCWC-20-0000457
15-MAR-2023
08:52 AM
Dkt. 23 OPA**

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

STATE OF HAWAIʻI,
Respondent/Plaintiff-Appellee,

vs.

LOGOVII TALO,
Petitioner/Defendant-Appellant.

SCWC-20-0000457

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-20-0000457; CR. NO. 1PC161000667)

MARCH 15, 2023

McKENNA, WILSON, AND EDDINS, JJ., WITH RECKTENWALD, C.J.,
CONCURRING IN PART AND DISSENTING IN PART, WITH WHOM CIRCUIT
JUDGE MALINAO, IN PLACE OF NAKAYAMA, J., RECUSED, JOINS

OPINION OF THE COURT BY McKENNA, J.

## I. Introduction

This opinion addresses whether the Circuit Court of the First Circuit ("circuit court") abused its discretion by imposing a probation condition allowing warrantless searches by a probation officer for contraband ("special condition Q").

1

Logovii Talo ("Talo")'s probation was revoked after a warrantless search by probation officers recovered a firearm and ammunition from his home.

After acceptance of certiorari, this court ordered supplemental briefing pursuant to Hawai'i Rules of Appellate Procedure ("HRAP") Rule 28(b)(4)(D) (2022),[1] asking whether the imposition of special condition Q was consistent with Hawai'i Revised Statutes ("HRS") § 706-624(2) (2016) and this court's holding in State v. Kahawai, 103 Hawai'i 462, 83 P.3d 725 (2004). Kahawai held that a sentencing court may not impose discretionary conditions of probation pursuant to HRS § 706-624(2) unless there is a factual basis in the record indicating that such conditions are reasonably related to the factors set forth in HRS § 706-606 (2014) and that they only involve deprivations of liberty or property reasonably necessary for the purposes indicated in HRS § 706-606(2). Kahawai, 103 Hawai'i at 462-63, 83 P.3d at 725-26.

---

[1] HRAP Rule 28(b)(4)(D) provides in relevant part:

> [T]he appellate court, at its option, may notice a plain error not presented. If an appellate court, when acting on a case on appeal, contemplates basing the disposition of the case wholly or in part upon an issue of plain error not raised by the parties through briefing, it shall not affirm, reverse, or vacate the case without allowing the parties the opportunity to brief the potential plain-error issue prior to disposition.

We hold that the circuit court did not abuse its discretion by imposing special condition Q because Talo was convicted of a felony and a crime of violence, which prohibited him from owning or possessing firearms and ammunition, and because he had notice that "contraband" would include such items. We therefore affirm the Intermediate Court of Appeals' ("ICA") June 30, 2022 judgment on appeal.

## II. Background

### A. Factual background

On the morning of September 11, 2015, Talo went to Rent-A-Center in Wahiawā. When an employee told Talo the store was closed, Talo forced his way in and repeatedly punched and struck the employee, then threatened to kill him if he called the police. The employee suffered a concussion, lacerated lip and buccal cavity, and a cervical strain.

### B. Circuit court proceedings

On June 29, 2017, Talo pled no contest to assault in the second degree in violation of HRS § 707-711(1)(a) and/or (b)

(2016).[2]  Relevant here, the circuit court[3] sentenced Talo to four years of probation with special terms and conditions.

A probation officer reviewed the terms and conditions of probation with Talo on July 20, 2017.  Talo signed the probation conditions form, acknowledging he understood the conditions.  Talo's pre-sentence report ("PSI") indicated that he did not have any registered firearms, but the probation conditions form contained a standard warning that Talo was "prohibited from owning or possessing any firearm or ammunition pursuant to HRS § 134-7."  Special condition B also prohibited Talo from owning or possessing any firearms or ammunition.  Additionally, special condition Q provided that Talo was to:[4]

> Q.    Submit at reasonable times to a search of your person, residence, vehicle, or other sites and property under your control by any probation officer, with or without a warrant, based on reasonable suspicion that illicit substances(s) or other contraband, may be in the places(s)of a search.  Any

---

[2]    HRS § 707-711(1)(a) and (b) (2016) provided:

(1) A person commits the offense of assault in the second degree if:
(a) The person intentionally, knowingly, or recklessly causes
    substantial bodily injury to another;
(b) The person recklessly causes serious bodily injury to another[.]

[3]    The Honorable Karen T. Nakasone presided.

[4]    Talo's special condition Q was based on HRS § 706-624(2)(q), which provides:

> (q) Submit to a search by any probation officer, with or without a warrant, of the defendant's person, residence, vehicle, or other sites or property under the defendant's control, based upon the probation officer's reasonable suspicion that illicit substances or contraband may be found on the person or in the place to be searched[.]

4

> illicit substances(s) or contraband found or observed in such a search may be seized[.]

Two years later, in June and July of 2019, Talo's wife, Jenifer Talo ("Jenifer"), filed two domestic abuse temporary restraining order petitions against Talo ("TRO petitions"). Jenifer alleged in both petitions that Talo may own, possess, or have access to a weapon.

Both petitions were ultimately dissolved. On September 30, 2019, however, a sergeant from the Honolulu Police Department ("HPD") contacted probation supervisor Eleanor Kekauoha ("Kekauoha") to inform her that Jenifer and the Talos' son had reported that Talo had a firearm. Kekauoha opened a probation violation investigation for prohibited possession of a firearm.

On October 1, 2019, Kekauoha spoke to Jenifer regarding the location of the firearm and ammunition. Kekauoha then reviewed Jenifer's TRO petitions. Kekauoha again spoke to Jenifer on October 14, 2019, to set up a meeting, which finally occurred on November 19, 2019. During this meeting, Kekauoha and assistant probation supervisor Brooke Mamizuka obtained more details from Jenifer and her son regarding the firearm and ammunition in the home.

Based on this information, probation officers conducted a warrantless search of Talo's home and car on December 6, 2019. Probation officers found a firearm wrapped in a lavalava under the mattress of Talo's bed, in his bedroom. They also located

5

ammunition in an adjacent laundry basket in the same room. Because probation officers do not handle or store weapons, HPD officers were present and were called upon to handle the firearm and ammunition. A motion to revoke Talo's probation was filed the same day.

At the January 16, 2020 initial hearing on the motion to revoke, Talo orally moved to exclude or suppress all evidence gathered as a result of the warrantless search. He asserted the search had been a subterfuge to have probation officers conduct a warrantless search for later criminal prosecution, which is prohibited by State v. Propios, 76 Hawai'i 474, 480, 879 P.2d 1057, 1063 (1994). Various witnesses then testified over several days in a consolidated hearing on the motions.

On March 12, 2020, the circuit court denied Talo's motion to suppress, concluding the probation officers had specific and articulable facts to support a reasonable suspicion to conduct a warrantless search of Talo's home and car. The court concluded the search was properly conducted for probation purposes, for public safety, and the rehabilitative goals of probation. HPD stopped its criminal investigation when the prosecutor's office indicated it would not be pursuing criminal charges. The circuit court therefore determined the search was not a subterfuge or a ruse for criminal prosecution and was not for an HPD investigation.

On June 18, 2020, the circuit court granted the motion for revocation of probation and resentenced Talo to five years of imprisonment with credit for time served.

**C.  ICA proceedings**

On July 16, 2020, Talo filed a notice of appeal to the ICA. Talo asserted: (1) the circuit court erred in denying Talo's motion to suppress because the probation search was merely a subterfuge for later criminal prosecution in violation of Propios, 76 Hawai'i at 480, 879 P.2d at 1063; and (2) the circuit court abused its discretion in sentencing Talo to an open term of imprisonment of five years.

The ICA concluded there was no indication that police and probation officers colluded to gather evidence for a new criminal prosecution against Talo; rather the purpose of the warrantless search was to investigate a possible probation violation.  The ICA further held the circuit court properly considered the factors in HRS §§ 706-621 (2014)[5] and 706-606,

---

[5]   HRS § 706-621 Factors to be considered in imposing a term of probation. The court, in determining whether to impose a term of probation, shall consider:

> (1) The factors set forth in section 706-606 to the extent
> that they are applicable;
> (2) The following factors, to be accorded weight in favor
> of withholding a sentence of imprisonment:
> > (a) The defendant's criminal conduct neither caused nor
> > threatened serious harm;
> > (b) The defendant acted under a strong provocation;
> > (c) There were substantial grounds tending to excuse or
> > justify the defendant's criminal conduct, though
> > failing to establish a defense;

7

including the nature and circumstances of the offense, Talo's history and characteristics, and public safety concerns.  The ICA therefore held the circuit court did not abuse its discretion in re-sentencing Talo to a five-year term of imprisonment.

## D.   Certiorari proceedings

Talo filed an application for writ of certiorari raising the same legal issues he raised before the ICA.  Although we agree with the ICA that the issues Talo raised lack merit, we accepted certiorari to address whether the circuit court erred in imposing the warrantless search probation condition in the first instance.

---

(d) The victim of the defendant's criminal conduct induced or facilitated its commission;
(e) The defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the present crime;
(f) The defendant's criminal conduct was the result of circumstances unlikely to recur;
(g) The character and attitudes of the defendant indicate that the defendant is unlikely to commit another crime;
(h) The defendant is particularly likely to respond affirmatively to a program of restitution or a probationary program or both;
(i) The imprisonment of the defendant would entail excessive hardship to the defendant or the defendant's dependents; and
(j) The expedited sentencing program set forth in section 706-606.3, if the defendant has qualified for that sentencing program.

We therefore ordered supplemental briefing on the question of whether the imposition of special condition Q was consistent with HRS § 706-624(2) and this court's holding in Kahawai.

### III. Standard of Review

> A sentencing judge generally has broad discretion in imposing a sentence. The applicable standard of review for sentencing or resentencing matters is whether the court committed plain and manifest abuse of discretion in its decision. Factors which indicate a plain and manifest abuse of discretion are arbitrary or capricious action by the judge and a rigid refusal to consider the defendant's contentions. And, generally, to constitute an abuse it must appear that the court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.

State v. Mundon, 121 Hawai'i 339, 349, 219 P.3d 1126, 1136 (2009) (quoting State v. Kahapea, 111 Hawai'i 267, 278, 141 P.3d 440, 451 (2006)).

### IV. Discussion

#### A. Applicable law

Before addressing the parties' supplemental briefs, we summarize Kahawai and other law relevant to issues on certiorari.

In State v. Fields, 67 Haw. 268, 686 P.2d 1379 (1984), we balanced a probation condition allowing warrantless searches by probation officers against a defendant's constitutional rights. Defendant Shirley Fields ("Fields") was convicted of three drug charges and sentenced to probation. 67 Haw. at 279, 686 P.2d at 1388. A condition of probation made her "subject at all times . . . to a warrantless search of her person, property and

9

place of residence for illicit drugs and substances by any law enforcement officer including her probation officer." 67 Haw. at 271, 686 P.2d at 1383-84. Before any search pursuant to that condition occurred, Fields challenged it on appeal. 67 Haw. at 273, 686 P.2d at 1384.

We noted that defendants sentenced to probation, like those on parole or in prison, are subject to limitations from which ordinary persons are free. 67 Haw. at 277, 686 P.2d at 1387. We pointed out, however, that a defendant on probation still has the right to enjoy a significant degree of privacy. 67 Haw. at 279, 686 P.2d at 1388. We recognized that our state constitution explicitly protects people against unreasonable searches, seizures, and invasions of privacy.[6] 67 Haw. at 282, 686 P.2d at 1390. We explained that while a warrantless search condition might serve the probationary goal of protecting the public, it was doubtful that a near-total surrender of privacy would be reasonably related to Fields' rehabilitation. 67 Haw. at 278, 686 P.2d at 1387-88.

---

[6] We cited to Article I, section 7 of the Constitution of the State of Hawai'i, 67 Haw. at 282 n.10, 686 P.2d at 1391 n. 10, which provides:

> The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches, seizures and invasions of privacy shall not be violated; and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized or the communications sought to be intercepted.

We also pointed out that probation conditions must contribute to the rehabilitation of the defendant, 67 Haw. at 278, 686 P.2d at 1387, and we discussed the role of probation officers.  A probation officer has been described as a social therapist in an authoritative setting.  67 Haw. at 280, 686 P.2d at 1388.  The officer must monitor a probationer's life and help them safely reintegrate into the community.  Id.  Thus, we reasoned that a probation officer has a unique interest in invading a supervised defendant's privacy and that given the officer's necessary involvement in a supervised person's life, there is a diminished expectation of privacy.  67 Haw. at 280, 686 P.2d at 1389.

Because of Fields's known involvement in drug trafficking, we concluded a condition allowing warrantless searches by her probation officer could serve a legitimate correctional purpose and contribute to her rehabilitation.[7]  67 Haw. at 280, 686 P.2d at 1388.  We held, however, that such a condition would be unreasonable unless it required "specific and articulable facts giving rise to a reasonable suspicion that illicit drugs are concealed on the person, in the property, or at the place of

---

[7]     We distinguished between a probation officer, whose responsibility is to monitor a probationer, and a police officer, who seeks to investigate and prosecute criminal activity.  67 Haw. at 280, 686 P.2d at 1388.  We concluded that warrantless searches at the whim of police officers were unlikely to be rehabilitative and unduly restrictive of a probationer's liberty.  Id.

residence" of the defendant.[8]   67 Haw. at 281, 686 P.2d at 1389.

Because the probation condition was not so limited, we vacated

the sentence and remanded for resentencing consistent with our

opinion.  67 Haw. at 282, 686 P.2d 1390.

Then, in State v. Lee, 10 Haw. App. 192, 862 P.2d 295

(1993), the ICA held that a defendant's probation may not be

revoked for failure to comply with a special condition of

probation when he was never provided with written notice of that

condition, as required by HRS § 706-624(3) (Supp. 1992).  10

Haw. App. at 192, 862 P.2d at 295-96.  HRS § 706-624(3) then

(and still) provides as follows:

> (3)  Written statement of conditions.  The court shall
> order the defendant at the time of sentencing to sign a
> written acknowledgment of receipt of conditions of
> probation.  The defendant shall be given a written copy of
> any requirements imposed pursuant to this section, stated
> with sufficient specificity to enable the defendant to
> comply with the conditions accordingly.

The ICA discussed the Commentary to HRS § 706-624, which

indicates that the written notice requirement "is an addition to

the law suggested by the Model Penal Code and accepted in other

states.  The intent is to provide the defendant with notice of

what is expected of him in a form which will not escape his

memory."  Lee, 10 Haw. App. at 198, 862 P.2d at 298.

The next year, we held that despite the existence of

specific and articulable facts providing reasonable suspicion of

---

[8]     The existence of such required facts is not at issue in Talo's case.

12

a probation violation, a warrantless search by probation officers can be invalid if its true purpose is future criminal prosecution. Propios, 76 Hawai'i at 487, 879 P.2d at 1070. We held the search in question unreasonable "because the avowed purpose was in reality a subterfuge designed to facilitate a criminal investigation," as police took over a search nominally conducted by probation officers to gather evidence for use in a criminal prosecution, which actually occurred. 76 Hawai'i at 480-81, 879 P.2d at 1063-64.

Finally, Kahawai involved a defendant convicted of violating a protective order. 103 Hawai'i at 463, 83 P.3d at 726. The State requested an alcohol and substance abuse assessment and treatment, as necessary, as conditions of probation. Id. The State argued that if a PSI had been completed, various parties would have attested to the necessity for such assessment and treatment. Id. Despite Kahawai's assertions that nothing in the record warranted such conditions, the court imposed special conditions relating to alcohol and substance abuse. Id.

On certiorari, we held a sentencing court has discretion to impose the conditions set forth in HRS § 706-624(2),[9] but that

---

[9] HRS § 706-624(2) now provides:

> (2) Discretionary conditions. The court may provide, as further conditions of a sentence of probation, to the extent that the conditions are reasonably related to the

factors set forth in section 706-606 and to the extent that the conditions involve only deprivations of liberty or property as are reasonably necessary for the purposes indicated in section 706-606(2), that the defendant:

(a) Serve a term of imprisonment to be determined by the court at sentencing in class A felony cases under section 707-702, not exceeding two years in class A felony cases under part IV of chapter 712, not exceeding eighteen months in class B felony cases, not exceeding one year in class C felony cases, not exceeding six months in misdemeanor cases, and not exceeding five days in petty misdemeanor cases; provided that notwithstanding any other provision of law, any order of imprisonment under this subsection that provides for prison work release shall require the defendant to pay thirty per cent of the defendant's gross pay earned during the prison work release period to satisfy any restitution order. The payment shall be handled by the adult probation division and shall be paid to the victim on a monthly basis;

(b) Perform a specified number of hours of services to the community as described in section 706-605(1)(d);

(c) Support the defendant's dependents and meet other family responsibilities;

(d) Pay a fine imposed pursuant to section 706-605(1)(b);

(e) Work conscientiously at suitable employment or pursue conscientiously a course of study or vocational training that will equip the defendant for suitable employment;

(f) Refrain from engaging in a specified occupation, business, or profession bearing a reasonably direct relationship to the conduct constituting the crime or engage in the specified occupation, business, or profession only to a stated degree or under stated circumstances;

(g) Refrain from frequenting specified kinds of places or from associating unnecessarily with specified persons, including the victim of the crime, any witnesses, regardless of whether they actually testified in the prosecution, law enforcement officers, co-defendants, or other individuals with whom contact may adversely affect the rehabilitation or reformation of the person convicted;

(h) Refrain from use of alcohol or any use of narcotic drugs or controlled substances without a prescription;

(i) Refrain from possessing a firearm, ammunition, destructive device, or other dangerous weapon;

(j) Undergo available medical or mental health assessment and treatment, including assessment and treatment for substance abuse dependency, and remain in a specified facility if required for that purpose;

(k) Reside in a specified place or area or refrain from residing in a specified place or area;

(l) Submit to periodic urinalysis or other similar testing procedure;

(m) Refrain from entering specified geographical areas without the court's permission;

(n) Refrain from leaving the person's dwelling place except to go to and from the person's place of employment,

the discretion is not without limits.  103 Hawai'i at 465, 83

P.3d at 728.  We held:

> A sentencing court may not impose discretionary conditions
> of probation pursuant to HRS § 706-624(2)(1993) unless
> there is a factual basis in the record indicating that such
> conditions are reasonably related to the factors set forth
> in HRS § 706-606 and insofar as such conditions involve
> only deprivations of liberty or property that they are
> reasonably necessary for the purposes indicated in HRS §
> 706-606(2).[10]

---

> the office of the person's physician or dentist, the
> probation office, or any other location as may be approved
> by the person's probation officer pursuant to court
> order.  As used in this paragraph, "dwelling place"
> includes the person's yard or, in the case of condominiums,
> the common elements;
> (o)  Comply with a specified curfew;
> (p)  Submit to monitoring by an electronic monitoring
> device;
> (q)  Submit to a search by any probation officer, with
> or without a warrant, of the defendant's person, residence,
> vehicle, or other sites or property under the defendant's
> control, based upon the probation officer's reasonable suspicion
> that illicit substances or contraband may be found on the person
> or in the place to be searched;
> (r)  Sign a waiver of extradition and pay extradition
> costs as determined and ordered by the court;
> (s)  Comply with a service plan developed using
> current assessment tools; and
> (t)  Satisfy other reasonable conditions as the court
> may impose.

[10]    HRS § 706-606(2) provides:

> The court, in determining the particular sentence to be
> imposed, shall consider:
>      . . . .
> (2)  The need for the sentence imposed:
>      (a)  To reflect the seriousness of the offense, to
>           promote respect for law, and to provide just
>           punishment for the offense;
>      (b)  To afford adequate deterrence to criminal
>           conduct;
>      (c)  To protect the public from further crimes of the
>           defendant; and
>      (d)  To provide the defendant with needed educational
>           or vocational training, medical care, or other
>           correctional treatment in the most effective
>           manner[.]

15

103 Hawai'i at 462-63, 83 P.3d at 725-26 (cleaned up).

We noted that a sentencing court is not limited to any particular source of information when imposing probationary conditions, as long as some factual basis for imposing such conditions exists in the record. 103 Hawai'i at 465-66, 83 P.3d at 728-29. We agreed with Kahawai, however, that the sentencing court had no basis for imposing conditions related to substance abuse when there was no factual basis in the record for such conditions. 103 Hawai'i at 466, 83 P.3d at 729. Accordingly, we remanded the case for resentencing. 103 Hawai'i at 468, 83 P.3d at 731.

## B. Supplemental briefs

As noted, we ordered supplemental briefing on the question of whether the imposition of special condition Q was consistent with HRS § 706-624(2) and this court's holding in Kahawai.

### 1. State's arguments

The State argues the imposition of special condition Q was consistent with HRS § 706-624(2) and Kahawai because, as a convicted felon, Talo could not possess firearms or ammunition, and doing so would violate his probation and also constitute a felony. The State posits:

> [S]pecial condition Q is directly related to factors such as "afford adequate deterrence to criminal conduct," and "protect the public from further crimes of the defendant." Special condition Q is directly relevant and related to the

> overall goal of probation to provide rehabilitation to the probationer and protect the public from any criminal activity.

The State thus contends special condition Q was consistent with Kahawai. It points out Kahawai involved improperly imposed drug and substance abuse conditions despite the lack of any drug history in the record. 103 Hawai'i at 466, 83 P.3d at 729. In contrast, the State argues, Talo's conviction for a violent felony resulted in substantial injuries. The State also asserts special condition Q directly relates to the factors in HRS § 706-606, and the overall rehabilitation of Talo. In summary, the State contends special condition Q served a valid rehabilitative purpose and was reasonably related to Talo's probation condition prohibiting him from possessing firearms and ammunition based on his felony conviction.[11]

---

[11] The State also asserts that although Talo's crime did not involve use of a firearm, special condition Q was reasonably related to his proclivity towards violent aggressive conduct and also to future criminality. The State cites a California case, People v. Balestra, 90 Cal.Rptr.2d 77 (Cal. 1999), in support. Balestra held the trial court did not abuse its discretion in imposing a warrantless search condition in an elder-abuse case that did not involve narcotics, theft, or firearms. Balestra, 90 Cal.Rptr.2d at 80, 82. The court ruled that "warrantless search conditions serve a valid rehabilitative purpose, and because such a search condition is necessarily justified by its rehabilitative purpose, it is of no moment whether the underlying offense is reasonably related to theft, narcotics, or firearms." 90 Cal.Rptr.2d at 82.

This holding, however, violates Kahawai's requirement of factual basis in the record for imposition discretionary conditions. 103 Hawaii at 466, 83 P.3d at 729. Therefore, it is not persuasive.

## 2.    Talo's arguments

Talo argues the circuit court illegally imposed special condition Q because there was no factual basis in the record or in the nature of the charge that supported the condition.

Talo argues that, in Fields, this court validated a warrantless search probationary condition because of the defendant's known proclivity for involvement in the trafficking of illicit drugs.  67 Haw. at 280, 686 P.2d at 1389.  Talo also argues that, in Propios, this court implicitly upheld a warrantless search condition based on the probationer's drug offense conviction and her history of drug use.  76 Hawai'i at 481, 879 P.2d at 1064.

Talo argues that, in contrast, there is nothing in the record that supports the imposition of any warrantless search condition.  Talo points out there was no weapon involved and that his blood alcohol content after the incident was .000%.  Talo also asserts this was his only conviction and that he has never been arrested or charged with offenses involving drugs, alcohol, or other contraband.  Talo also points to the statement in his PSI that he has never experimented with illegal substances and has not consumed alcohol in three to four years.

In summary, Talo argues special condition Q should not have been imposed because there was nothing in the nature and circumstances of the underlying offense or Talo's history and

18

characteristics that suggested the condition was necessary. He argues his felony conviction, without more, is insufficient to support the imposition of special condition Q. Furthermore, Talo claims that the nature of the charge itself, assault in the second degree, does not indicate the use of illicit substances or contraband that would support special condition Q.

## C.    Analysis

For the reasons discussed below, we hold the circuit court did not abuse its discretion by imposing special condition Q.

### 1.    Special condition Q is reasonably related to the factors in HRS § 706-606(2) and is consistent with Kahawai

As recognized in Kahawai, a trial court has discretion to impose special conditions of probation pursuant to HRS § 706-624(2) that are reasonably related to the factors set forth in section 706-606, but only to the extent that the conditions involve deprivations of liberty reasonably necessary for the purposes indicated in section 706-606(2). Kahawai, 103 Hawai'i at 465, 83 P.3d at 728. And pursuant to Kahawai, a factual basis for imposing special conditions of probation must inhere in the record.[12]  103 Hawai'i at 466, 83 P.3d at 729.

---

[12]    Although no longer at issue due to the revocation of probation, based on the applicable law discussed in Section IV.A, we agree with Talo that special conditions M, N, O, and P, relating to alcohol and drug/paraphernalia possession, use, consumption, testing, assessment, and treatment, if necessary, were improperly imposed on him. The record does not reflect that Talo had drug or alcohol issues. The imposition of these conditions violated Kahawai.

At issue in this case is special condition Q. HRS § 706-624(2) provides in relevant part:

> (2) Discretionary conditions. The court may provide, as further conditions of a sentence of probation, to the extent that the conditions are reasonably related to the factors set forth in section 706-606 and to the extent that the conditions involve only deprivations of liberty or property as are reasonably necessary for the purposes indicated in section 706-606(2), that the defendant:
>
> . . . .
>
> (q) Submit to a search by any probation officer, with or without a warrant, of the defendant's person, residence, vehicle, or other sites or property under the defendant's control, based upon the probation officer's reasonable suspicion that illicit substances or contraband may be found on the person or in the place to be searched[.]

HRS § 706-606, referred to in HRS § 706-624(2), provides:

> The court, in determining the particular sentence to be imposed, shall consider:
>
> (1)   The nature and circumstances of the offense and the history and characteristics of the defendant;
> (2)   The need for the sentence imposed:
>   (a)  To reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense;
>   (b)  To afford adequate deterrence to criminal conduct;
>   (c)  To protect the public from further crimes of the defendant; and
>   (d)  To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3)   The kinds of sentences available; and
> (4)   The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

Thus, HRS § 706-624 first requires a determination of whether a special (discretionary) condition of probation is reasonably related to the factors set forth in HRS § 706-606.

20

With respect to special condition Q, Talo was convicted of a felony under Hawai'i law, assault in the second degree.  He was also convicted of a "crime of violence" under Hawai'i law.[13]  As such, Talo is prohibited from owning, possessing, or controlling any firearm or ammunition pursuant to HRS § 134-7(b).

Hence, special condition Q was reasonably related to deterring Talo from committing an HRS § 134-7(b) firearm and/or ammunition possession crime.  It was also reasonably related to protecting the public from further crimes by Talo involving firearms.  Thus, at a minimum, special condition Q is reasonably related to factors (2)(b) and (c) of HRS § 706-606.

HRS § 706-624(2) further requires that special conditions involve deprivations of liberty only as reasonably necessary for section 706-606(2) purposes.  Due to the heightened danger of firearm use,[14] special condition Q involves a deprivation of

---

[13]    HRS § 134-1 (2016) defines "crime of violence" as "any offense, as defined in title 37, that involves injury or threat of injury to the person of another, including sexual assault in the fourth degree under section 707-733 and harassment by stalking under section 711-1106.5."

[14]    In 2020, Hawai'i had the lowest age-adjusted firearm mortality rate in the nation and only fifty total firearm deaths.  Firearm Mortality by State, Centers for Disease Control and Prevention, https://perma.cc/92XH-PMRD.  While Hawai'i ranks the lowest nationally in gun ownership and has some of the strictest firearm laws, the number of firearms in Hawai'i is increasing.  Gun Violence and Violent Crimes Commission ("GVVCC"), Report of the GVVCC 6 (2022).  From 2000 to 2020, the number of permit applications processed increased by 302.5 percent.  Id.  Additionally, between 2010 and 2019, Hawai'i saw a 38 percent increase in gun deaths.  Jolanie Martinez, Criminologists see uptick in gun violence involving Hawaii's young people, Hawai'i News Now (May 27, 2022), https://perma.cc/U6XP-RGX2.

liberty only as reasonably necessary for the section 706-606(2) purposes discussed above.

Finally, Kahawai also requires a factual basis in the record for imposing a discretionary condition of probation.[15] 103 Hawai'i at 466, 83 P.3d at 729. Although Talo did not use a firearm in the commission of the underlying assault, the record supports the imposition of special condition Q because Talo was convicted of a felony offense as well as a crime of violence, which prohibited him from owning or possessing any firearms or ammunition.

> **2. Under the circumstances, special condition Q's prohibition on possession of "contraband" gave Talo appropriate notice that he was prohibited from owning or possessing firearms or ammunition**

As discussed earlier, HRS § 706-624(3) requires that a written statement of probation conditions be provided to a defendant:

> (3) Written statement of conditions. The court shall order the defendant at the time of sentencing to sign a written acknowledgment of receipt of conditions of probation. The defendant shall be given a written copy of any requirements imposed pursuant to this section, stated with sufficient specificity to enable the defendant to comply with the conditions accordingly.

---

[15] The sentencing transcript is not part of the record, so it is possible that testimony at the sentencing hearing created a record indicating that special condition Q was necessary. Regardless, we conclude special condition Q was properly imposed based on the record.

The ICA explained in Lee that this written notice requirement is intended to provide defendants with notice of what is expected. Lee, 10 Haw. App. at 198, 862 P.2d at 298.

Special condition Q allows for warrantless searches by a probation officer based on reasonable suspicion that "illicit substances(s) or other contraband, may be in the places(s) of a search." (emphasis added). If, as required by Kahawai, a sufficient factual basis appears in the record to impose special conditions regarding drugs, a person on probation would most likely have notice that a warrantless search condition for "illicit substances" could allow for drug searches.[16]

The meaning of "contraband," however, is not clear. "Contraband" could include firearms, child pornography, illegal fireworks, military equipment, or even endangered animals kept as pets, just to name a few examples.[17] Hence, special condition

---

[16] The term "illicit substances" is understood to refer to addictive and illegal substances such as heroin and meth. Illicit Drug Addiction and Abuse, Addiction Center, https://perma.cc/CR8E-ARMF.

[17] Black's Law Dictionary (11th ed. 2019) defines "contraband" as follows:

1. "Illegal or prohibited trade; smuggling";
2. "Goods that are unlawful to import, export, produce, or possess."
**contraband**, *adj.*
**- absolute contraband.** (1908) Goods used primarily for war, such as arms and ammunition, as well as clothing and equipment of a military character.
**- conditional contraband.** (1915) Goods susceptible of being used for warlike and peaceful purposes, such as coal and food.
**- contraband per se**. (1901) Property whose possession is unlawful regardless of how it is used.
**- derivative contraband.** (1965) Property whose possession becomes unlawful when it is used in committing an illegal act.

Q does not provide sufficient notice to a person on probation as to what "contraband" the person is prohibited from possessing so as to "enable the [person] to comply with the conditions accordingly."  HRS § 706-624(3).  In addition, for "contraband" that has nothing to do with the record, special condition Q would violate Kahawai. [18]

In Talo's case, however, his written probation conditions contained a clear warning that he was "prohibited from owning or possessing any firearm or ammunition pursuant to HRS § 134-7." Special condition B also clearly prohibited him from owning or possessing any firearms or ammunition.[19]  Therefore, special condition Q sufficiently provided Talo with notice that "contraband" included firearms or ammunition.

---

[18]   We disagree with the dissent that a probation condition prohibiting possession of all "contraband" is consistent with the Hawai'i cases we have discussed.

[19]   YOU SHALL:
> . . . .
> B.   Not own or possess any firearms or ammunition.  If you have any firearms or ammunition, you must immediately turn them in to the appropriate county police department[.]

## V. Conclusion

Because Talo's points on certiorari lack merit and the circuit court did not abuse its discretion in imposing special condition Q, we affirm the ICA's June 30, 2022 judgment on appeal.

Benjamin E. Lowenthal         /s/ Sabrina S. McKenna
Jon N. Ikenaga (on the briefs)
for the petitioner             /s/ Michael D. Wilson

Loren J. Thomas              /s/ Todd W. Eddins
for respondent

